v. Innova Electronics, 2024-11-66 The District Court erred in granting a preliminary injunction in favor of Power Probe in this case based on errors of law and misapplication of its own factual findings. Your Honor, there are still outstanding issues that have to be resolved even after the patent expires. The case is still alive, and Power Probe is... But on validity, on infringement, even on claim construction as a legal matter, the first two things are going to be heavily factual. What has been decided here by the District Court, even on claim construction, was preliminary claim construction, which I think the Court said under what Jack Gutman or something, obviously can change. Can we even decide anything, assuming that we bump up against this April 27th expiration date? At that point, there's no preliminary injunction. Correct, Your Honor. When the patent expires, the preliminary injunction goes away. However, notwithstanding the fact that the claim constructions are at the preliminary injunction stage, Judge Navarro has indicated her inclinations, the direction she's going as to some of these claims. I believe there's substantial confusion, frankly, with regard to the technology. One example being that it seems like the District Court is confusing continuity as a measurable parameter and conductivity. Can I ask you... I want to ask a question related to the questions that Judge Tronto's asking. Let's say that we don't get an opinion out before April 27th. Do we even have the power to review the things you're asking us to review right now? I would say yes, Judge Stoltenberg. Why? There would be no preliminary injunction, no order to review. Why wouldn't it be an advisory opinion? I see what Your Honor is asking with regard to, if I'm understanding it correctly, interlocutory appellate jurisdiction. You can't appeal... I understand you might want an answer on claim construction. But we don't review a ruling on claim construction. We would be reviewing the grant of a preliminary injunction for an abuse of discretion. Correct. If the court were to decide, even after the patent's expiration, the patent had not expired at the time the appeal was taken, so the court had jurisdiction at that time. There are outstanding issues. And to Your Honor's point, we would certainly appreciate some claim construction clarity in a decision. If it came after the patent expired, I do believe that the court would still have jurisdiction because it had jurisdiction when the case came up, and there are still outstanding issues. But why wouldn't it be an advisory opinion? Just setting aside my jurisdiction question for a minute. Maybe that wasn't the right phrase to use. I don't believe it would be an advisory opinion because there are errors of law that the district court made that still need correction. Even if there's no preliminary injunction? Even if there's no preliminary injunction. Her Honor still made errors of law in applying Phillips, in applying Markman, in needing to get to constructions before she got to applying invalidity and infringement, or non-infringement as the case is, determinations. So I believe that the court would still have jurisdiction, not only jurisdiction, but would not be issuing an advisory opinion because Her Honor misapplied the law. Excuse me, we're not going to be deciding any of the merits issues with finality. We will just be deciding the question of the propriety of the preliminary injunction, not the merits issues. So as Judge Stoll points out, if we don't decide it before April 27th, it's an advisory opinion. I can understand the court's position on that. And I do believe that. What's the question? That position hasn't been expressed yet. As I understand, Your Honor is asking, how is it not? I think it's essentially the same question Judge Stoll asked in different words, if I'm not mistaken. Yes, the underlying, or I guess the top layer, if you will, of the standard of review here is abusive discretion on the preliminary injunction. Abusive discretion is found when the court has made clear errors of law or made factual findings that are not supported or that are contrary to the evidence. This court can still determine that the district court abuses discretion on the preliminary injunction based on those underlying determinations of Her Honor's errors of law. What is your support for that? Do you have a case or something to support that? Your Honor, that issue was not briefed, so I apologize. I don't have a case on point right now. I'm happy to look and submit a 28-J. I think I heard Judge Lurie emphasizing the preliminary nature of those rulings that we would be reviewing. And so we would only be talking about even, you know, it's not the final claim construction anyway. We'd only be looking at the preliminary nature and determining whether there was an abusive discretion, right? We're just having a really hard time understanding why it wouldn't be an advisory opinion if our opinion didn't come out before April 27th. Well, Your Honor, I think looking at the way that the district court handled this court's decision in the first appeal in this case is indicative of the importance of correcting the application of law. And I'm not trying to be intentionally evasive or dull in trying to respond to Your Honor's questions. Frankly, I don't have a case that I could cite to Your Honor. However... The importance of the issue doesn't help decide. The importance of us deciding the issue for your sake, for the district court judge's sake, is not the standard that's applied for whether something's an advisory opinion. Understood, Your Honor. What if we render a quick affirmance so as not to disturb the situation? Then the trial continues on the merits, preliminary injunction disappearing, and it simply becomes a patent infringement case. If the court were to issue a quick affirmance, I would respectfully submit that that would based on the errors of law that Judge Navarro had committed in her decision. However, Your Honor's correct in the procedural kind of developments from here that the case would proceed. Even if the court issued a reversal, it's going to go back to the district court and be litigated as a patent infringement case. And this preliminary injunction has, in fact, been in effect since, what, fall of 23? October of 2023, Your Honor.  So I believe I answered Your Honor's question. So to the merits of Judge Navarro's decision, she misconstrued or failed to construe multiple claims. In terms of not construing or misconstruing, display device configured to display a reading of the output signal, the reading being representative of the parameter is one of those terms. Another that we believe she just simply got wrong was the multimeter functionality. Multimeter functionality, Your Honor construed essentially as being the same thing as the plurality of parameters. She would not have used, or excuse me, the patent, the 899, would not have used those two phrases independently of one another if they were meant to mean the same thing. So Judge Navarro construed multimeter functionality to include a measurement of voltage, which there's no dispute the Inova Accused device performs. And Her Honor also got to the point of, I guess, concluding that continuity is a measurable parameter. And it's been our position that, practically speaking, continuity is not measurable. Conductivity might be measurable relative to resistance in an electrical circuit. However, continuity just determines whether or not there's an electricity flow from point A to point B. Do I remember correctly that that question was already addressed in the prior appeal before this court? No, Your Honor. OK. And I know, I understand, I'll be splitting hairs here, but I think it's a very, very, very important distinction that this court found that Judge Navarro's construction of the measurement of continuity in Claim 1 had to be construed as a measurable parameter because Claims 10 and 12, which are dependent on Claim 1, spoke to measurement of continuity. So when Her Honor was looking at Claim 1 and said, we have to, we can't measure continuity, this court said, as a matter, and this goes back to Judges Taranto and Lurie were on the original panel. That in this patent, it is measurable. Right. Right. So what's the very fine distinction you want to make? So the fine distinction, and this goes back to Judge Newman's question in the first appeal, if Your Honor, Judge Taranto remembers, is Judge Newman asked, don't we have to construe as a matter of law for purposes of the 899 patent that continuity is a measurable parameter? And that is a very narrow decision that this court reached on its first appeal. Power Probe took that decision and flipped it around to, well, now continuity is measured. And continuity, as a matter of fact, is measured or is measurable. And that's not what this court said. That's not what Judge Newman asked about, and that's not what this court's decision said. It said, as a matter of law and claim construction for purposes of the 899 exclusively, continuity has to be construed as a matter of law as a measurable parameter. But this goes back to my opening comments when I believe that Judge Navarro was confusing continuity and conductivity, and perhaps the patent writer was confused as well. Continuity is, again, a determination of whether or not it's a yes or no. There's electricity flowing from A to B. Conductivity, on the other hand, is why we use copper to make wires instead of wood, because wood's not going to conduct electricity. There's going to be too much resistance. And if you're going to measure conductivity, you're going to measure resistance. And that's what our experts have testified, both Power Probes and ANOVAs, that you could quote, unquote, measure continuity by looking at resistance. And I believe that term was being interchanged kind of a little bit loosely, if you will, with continuity. Continuity cannot be measured as a matter of practicality. Power Probe failed to show at the district court level that anybody ever measured continuity. In fact, Judge Navarro's decision from the first appeal specifically said that Power Probe's expert demonstrated the opposite. We had a light bulb connected to the 5420, which was connected to a battery. And when power was applied, it gave an 11.4 voltage reading. When 12 volts was applied, there was some resistance, and the voltage dropped a bit. When no power was applied, the continuity didn't change. And the voltage came out as zero volts. So continuity was not being measured. Dr. Paredes? Can I just kind of make sure I think what you're saying? I just want to make sure I have it right. Is it your view that as a matter of claim construction, a parameter could include, a measurable parameter could include continuity because of the dependent claim reciting that? But that doesn't necessarily mean that in the accused device it's measuring continuity. Absolutely correct, Your Honor. And this goes to Section 101, indefiniteness and enablement arguments that actually Power Probe raised in the first appeal. Nobody's ever said, how do you measure continuity? Nobody's ever shown that the accused device or any item device practicing the 899 actually measures continuity. Nobody can give us a parameter or a measurement unit, if you will, of continuity. There's been some discussion that you could determine continuity based on resistance. And then Power Probe kind of was seeing that that was a failing argument because Inova's device indisputably does not measure resistance. So then they kind of got into this threshold argument of, OK, well, if we can't measure continuity because the 5420 doesn't measure resistance, then we have to come up with another theory. And it was this threshold theory where if you've got thresholds within the device and so much of a threshold, then there's no continuity, but you're measuring voltage, but it counts as measuring continuity. It was this kind of very amorphous theory that they were presenting. And frankly, no one has ever shown that continuity can be measured. Conductivity, yes. Continuity, no. Counselor, your time is almost up. So why don't we hear from the other side? We'll give you your few minutes of rebuttal back. Thank you, Judge. Mr. Bandera. Thank you, Your Honor. Good morning. Let me start by addressing the patent's expiration, Your Honor's first question. It is true the patent expires at the end of April of this year. It's also true that there's enough good law from the circuit that preliminary constructions are just that. They're preliminary. They're based on the preliminary record. In this case below, the district court has not yet even held the Markman hearing. So its constructions are based on the briefing as they existed in the preliminary injunction hearing. I believe that the claim construction briefing was submitted between the hearing and the grant of the injunction, but they did not form any part of the district court's constructions. So, Your Honor, Judge Stoll's question about it being an advisory opinion would really be the case, and that is because Judge Navarro has herself recognized that her preliminary constructions are not binding, even on her own Markman hearing to come. Appendix 15 is the district court's order granting the preliminary injunction, and there is a section heading, Section 3A, which is called preliminary claim construction. That's on page 3 of the court's order. Appendix 17 is that same section. The court says, quote, Claim constructions determined at the preliminary injunction stage are not the law of the case and may be changed at a later stage of the proceeding. So I understand my partner on the other side's argument that the claim constructions were wrong. I'm prepared to address any or all of them. I think that counsel addressed some of his arguments, but the point is that for purposes of this appeal, and that is, Judge Lurie, unless this court summarily affirms their issues in order before April the 27th, I am concerned, and this is a question for the court with our guidance to the extent we have any, that this court may actually lack jurisdiction. And there is, I do have case law to cite on this point. An opinion case was Matulik Systems Co. L.P. v. Cooper. It's a Federal Circuit case from 1996, 100 F. 3rd, 938. It was a case in which Judge Lurie wrote a concurring opinion. In that case, the court said, quote, the only relevant fact in this appeal is that the 584 patent has expired. Thus, Matulik no longer may seek or obtain a preliminary injunction against infringement of the 584 patent. And in penning the concurring opinion, Judge Lurie, you said, I concur in the decision to dismiss the appeal because the patent has expired and the appeal from the decision not to grant the preliminary injunction is therefore And Your Honor goes on to say that the opinion should have stopped there. Why was it a concurrence as opposed to something? Yeah, it's that last point, is that the majority opinion went on to give an advisory on some of the non-infringement issues. So there's precedent for doing the opposite of what you're suggesting? I'm saying that I don't, I would prefer, I know what I would prefer, but I'm saying that with this court, Judge Lurie, what you have done in the past is concur with an opinion saying that there is no jurisdiction and we should leave, we should put the pen down and not give advisory opinions anywhere beyond that point. So I leave the issue of a mootness there. Well, you know that separate opinions are simply opinions, not judgments. Yes. Now this injunction has been in place for almost a year and a half. So you would certainly, as the patentee, which you are, right? Certainly argue that the most sensible thing to do is to let it go for another month and a half. Your Honor, Power Probe is confident on the merits of the appeal and so would invite the court to consider any portion of Inova's appeal that it wishes. I think that we've come to call this appeal a haystack. I think there are more than 20 instances where Inova accuses the district court below of abusing its discretion. This court may feel... You mean we would be looking for needles in the haystack? Power Probe submits that this is a haystack without needles. It's a bit of a paradox. But based on the appeal and the briefing, we've counted over 20 issues where Inova is accusing the district court of abusing its discretion. Some people call that a kitchen sink appeal. We've used that nomenclature as well, Your Honor. This court may also feel compelled to put its oar in the water on the issue of Inova's attack on the district court's partiality, which is a delicate subject. Mr. Moser did not raise it and prepare to address it, but I won't unless it comes up. But that's floating around in this appeal as well. There's also the issue of Power Probe's argument on the law of the case, the argument being that in the first appeal, Inova made a similar kitchen sink argument and raised all of the arguments it's making now on both non-infringement and validity as alternative grounds for affirmance. And this court said that it considered, quote, considered those arguments and found them unpersuasive. Now, being the humble person that I am, I cannot and will not project what I think the court meant when it said that. But if the court did in fact consider those arguments on the merits and it did find them unpersuasive, it would be curious and I think fall under the guise of the law of the case to find any of those arguments in this appeal to be persuasive, mostly because each argument was given the same sort of short shrift attention in both appeals. Did the district court say more in its October 2023 grant opinion on those issues than the court said in September 2021 denial opinion, which I think is what we reviewed last time? Yes, yes. So the denial of the first injunction was based on a very narrow issue of claim construction. The idea that there's not much disagreement about how the accused products work. Right, I guess since I didn't look into this. So if the September 2021 opinion said almost nothing about likely invalidity or infringement, but just on this one issue, then it's not really the same thing for us then to have said we're not going to address arguments on that, on those issues being presented by INOVA as it would be to say arguments being presented by INOVA now on issues that there's a 20-page opinion about. I agree with Your Honor. The point of the law of the case is that as it exists between what this court said and considered and said about arguments in the first appeal versus what this court is now being asked to consider, which is those same exact arguments, which in the first appeal were submitted as alternate grounds for affirmance. In this appeal, they're being submitted as grounds for reversal. They're the exact same non-infringement and validity arguments. And if the court considered them in sufficient capacity the first go-around and found them unpersuasive, I don't know what would have to happen for the same court in a similar panel to consider those same arguments again and this time find them persuasive. In its reply brief, INOVA's attack on this law of the case, whether it is binding or merely a persuasive argument, is not to deny that it made all the arguments in the first appeal that it's making here. If you look at Power Probe's opposition brief, there's a handful of tables submitted charting where those arguments were made in the first appeal and where and how they're being made in the second appeal. INOVA doesn't dispute that all of its arguments now were before this court in the first appeal. The position INOVA takes is that the brevity of this court's analysis the first time makes it so that it should consider them in full or again this time. And I'd like to offer the court a case citation because this argument was made in reply. We haven't had a chance to address it yet. The case is Uniloc USA, Inc. v. Microsoft Corp. It's a Federal Circuit case from 2011. It's 632 F. 3rd 1292. It's on the issue of law of the case as between a first and second appeal in a patent infringement case. And in the second appeal, this court said the following about law of the case as it relates to arguments raised in the first appeal. Again, this court in the second appeal said, In that appeal, referring to the first appeal, Microsoft presented alternative arguments for affirmance. This court, again in the second appeal, summarily rejected them, noting that, and this is the second appeal quoting the first appeal, And now this is the second court saying again about the law of the case, by this court in the prior appeal and is thus law of the case. So the brevity of the analysis has nothing to do with the law of the case analysis. If this court did in fact consider all of Inova's arguments in the first appeal, they should constitute law of the case in this appeal or at least be persuasive to use the opposite of what the court found, which was that they were unpersuasive. Can I go back for a minute to the advisory opinion point that we were talking about before? Is that impacted at all about the fact that the district court set bond in this case, pending the appeal, or set bond for the preliminary injunction? The district court did set a bond. The bond was posted and the injunction issued. I think that the Inova is certainly within its rights if the injunction is allowed to go through and Inova is ultimately successful on the merits, then it can and likely will claim that it should be reimbursed for the lost profits during the course of the injunction. But it has that in its tools to use, such that I don't think this court needs to act just to preserve the bond that has been paid and potential harm from an injunction. You're saying it's in the ultimate final decision in the case. Correct. I understood Your Honor to be asking whether there's... Whether that would somehow give them a stake that would cause us to have to consider the preliminary injunction even after the patent expires. That was my question. I understand the question. I think in the Metallics case that I cited earlier, was a patent infringement case, the appeal was taken from the grant of an injunction, so there was an injunction in place. And as soon as the patent expired, this court nevertheless found that it lacked jurisdiction. Anything further? It sounds like I have two minutes. Let me make a quick point about continuity. My colleague made the point earlier in its briefing that the district court, part of it just feeds into the impartiality argument. The district court somehow flipped that it took a very narrow finding on claim construction from the first appeal and used it to do a 180-degree turnaround in the proceedings below. I would refer the court to Power Probe Supplemental Briefing, so that when the mandate issued, the district court provided the guidance to the parties and requested a 10-page supplemental brief on the issue of the impact of the first appeal on the injunction. Power Probe used that 10-page briefing to explain why, because this court held that continuity is measurable, that the accused product does in fact measure continuity. And that is a technical argument that goes to the heart of what happens in the accused product, which is that unlike rudimentary devices that merely put a light bulb with a known resistance on a circuit, where if the resistance is low enough, the light bulb goes off. Nothing is quantified. Nothing is measured. Continuity is detected. What this court, what Power Probe used, this court's first appeal to demonstrate to Judge Navarro is that the accused product uses a much more sophisticated method of testing for continuity. No one disputes that the accused product tests continuity. The issue is whether that testing constitutes mere detection or measurement. And what this court said in the first appeal, which is that continuity must be measurable, Power Probe used that to demonstrate that if it is measurable, this is how it must be measured. This is the only way that continuity can be measured in the context of a circuit tester like the accused product. And how that's accomplished is rather than putting a light bulb across a circuit, there is a processor, a microcontroller, in this case an analog-to-digital converter, that takes a signal that comes in as a sine wave, converts it to a binary signal, a digital signal, compares that quantitative value, it's a numerical value, compares that value to a threshold, and makes a determination about how to present continuity to the user. And that Power Probe submitted constituted measurement of continuity, enough to take the previous denial and turn it into a grant of the preliminary injunction. And I thank the court for its time. Thank you, counsel. Mr. Moser has some other time. Let me ask you, Mr. Moser, you were the enjoined party. You may not wish or be able to say, but on April 28th, do you expect your client to go back on the market at risk? I'm sorry? I think I cut your honor off. I apologize. Your client could go on the market April 28th at risk, but because the injunction will have expired. Do you expect your client to do that? I'm sure they have plans to go back on the market. I don't know when. I don't know if it'll be, I doubt it would be the following day, but they certainly, you know, they've been enjoined for, like your honor said, a year and a half. And at that point, their being on the market would not be infringing. Correct. So if we found the injunction to have been erroneously granted an abuse of discretion, we would be giving your client just a little bit of a head start. That's the only consequence. I wouldn't even call it a head start, your honor, because, again, they've been enjoined from doing anything for a year and a half, so I think they would be able to start getting back into the flow of things, if you will. So it wouldn't be of major consequence. What would not be? Our reversing the grant of the preliminary injunction. I see what you mean. I misunderstand your original question. You want us to decide merits issues? That's correct. And also, you know, the fact that the injunction damages go back six years, I believe Judge Durano mentioned that in the last appeal, or the last hearing, excuse me, that, you know, we've got to get this right because they're going to be looking back, and damages are obviously part of the injunction as well, but I don't want to digress too much. I see I have less than a minute left, and I did want to address a couple of the comments that my colleague made.  So one thing on the law of the case is I believe the case that Mr. Benguera cited or quoted from said that the other issues that were raised by the respondent were without merit. I think that's a lot different than unpersuasive in the context of the first appeal in this case, because in the first appeal in this case, again, this court decided that there was an error of law based on the construction of the term continuity as a measurable parameter, and Mr. Long, Mr. Benguera's colleague, argued that that wrongful determination or that error of law underlied the entire proceeding. The entire decision to deny the injunction was based on that one error. I see my time is up. May I complete my... One more thought. Just to that same comment, Your Honor, that one decision was the entire case to them, and so when this court decided that that was an erroneous decision from the district court and had to be reversed and everything else depended on that, it looked at everything else perhaps and said, well, there's nothing else that's going to overturn this major error, and so we're going to have to vacate remand. Thank you to both counsel. Case is submitted, and that concludes...